**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**FLAGSTAR BANK**

       Plaintiff,                  CIVIL ACTION NO. 05-CV-70950-DT

    vs.

                                     DISTRICT JUDGE LAWRENCE P. ZATKOFF

**FEDERAL INSURANCE CO.,**

                                     MAGISTRATE JUDGE MONA K. MAJZOUB

       Defendant.
_____/

## OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

On January 24, 2006 Defendant Federal Insurance Company ("Federal") filed a Motion for a Protective Order. On February 24, 2006 Plaintiff Flagstar Bank FSB ("Flagstar") filed a Motion to Compel Production of Information Relating to Defendants' Claim Investigation and Underwriting. Both Motions concern the applicability of the attorney-client and work product privileges to documents produced by Federal in connection with their investigation of Flagstar's insurance claim. The parties have fully briefed the motion, and the Court finds that the decision process would not be significantly aided by oral argument. The Court has therefore dispensed with oral argument and pursuant to Local Rule 7.1(e)(2) it is ORDERED that the motions be resolved on the briefs submitted. The Court has conducted an *in camera* review of the contested documents.

**Background**

Plaintiff Flagstar is a federally chartered savings bank. Among other activities, Flagstar operates as a warehouse mortgage lender, advancing short term money to finance residential

mortgage transactions and selling the closed mortgages to long term lenders. Defendant Federal issued a $10 million federal bond ("the Bond") insuring Flagstar against certain losses in 2004.

In 2003, Flagstar entered into warehousing agreements with the Amerifunding/Americmax Realty Group, Inc ("Amerifunding"). Under the warehousing agreement, Flagstar extended a $20 million line of credit to Amerifunding. Flagstar advanced money on this line of credit pursuant to a series of purported residential mortgage loan transactions. Flagstar eventually discovered that Amerifunding and its principals were submitting falsified documents and pocketing Flagstar's advances. Flagstar initially reported over $19 million in losses on the Amerifunding account, though some of that money has since been recovered.

Flagstar reported the loss to Federal and law enforcement authorities. In order to determine whether Flagstar's loss was covered by the financial institution bond, Federal conducted an investigation of Flagstar's handling of the Amerifunding account. Federal eventually concluded that Flagstar's loss was not covered under the bond and denied Flagstar's claim. Flagstar then filed suit in this Court, arguing that their losses were covered under the policy, and that Federal denied Flagstar's claim in bad faith.

**Federal's Investigation**

Flagstar submitted its initial proof of loss on June 11, 2004. Federal retained counsel almost immediately. On July 30, 2004 Federal participated in a conference call with Flagstar's inside and outside counsel. During the call, Federal announced that it was likely to preliminarily deny Plaintiff's claim. Federal explained that the claimed loss was not covered in part because Flagstar's initial proof of loss stated that Flagstar had not obtained originals or copies of the underlying mortgage documents or promissory notes before advancing funds to Amerifunding. Flagstar

maintains that the initial proof of loss contained no such statement. On August 18, 2004, Flagstar agreed to provide Federal with an amended proof of loss. Federal received an amended proof of loss from Flagstar on September 8, 2004. The amended proof of loss provided Federal with evidence showing that its advances to Amerifunding occurred only after Flagstar received the underlying mortgage documents and promissory notes.

Federal maintained that Flagstar's loss was not covered for a variety of reasons, but did not issue a final coverage opinion in September 2004. Instead, Federal hired a forensic accountant, Robert Moody, to investigate Flagstar's warehouse lending to Amerifunding. The accountant was given access to Flagstar's records and employees. On February 24, 2005 Moody sent a detailed 35 page report addressing issues pertinent to Flagstar's claimed loss to Federal's attorneys. Counsel for Federal sent Flagstar a 24 page letter the next day, announcing its decision to deny coverage and explaining its reasoning.

## LAW AND ANALYSIS

Flagstar seeks an order to compel the production of four broad classes of discovery: (1) information relating to Federal's investigation of Flagstar's claim; (2) information relating to the history and drafting of Flagstar's bond; (3) information relating to the Federal's financial institution bond reserves and reinsurance; and (4) information relating to other financial institution bonds underwritten by Federal.

**General Discovery Standards**

Under FED. R. CIV. P. 26(b)(1), discovery may be had "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . if the information sought appears reasonably calculated to the discovery of admissible evidence." The determination of

"relevance" is within the court's sound discretion. *See e.g.*, *Watson v. Lowcountry Red Cross*, 974 F.2d 482 (4th Cir. 1992). In applying the discovery rules, "relevance" should be broadly and liberally construed. *Herbert v. Lando*, 441 U.S. 153 (1979); *Hickman v. Taylor*, 329 U.S. 495 (1947). "The requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms." *Miller v. Pancucci*, 141 F.R.D. 292, 294 (C.D. Cal. 1992).

**A.  Federal's Claim of Attorney Client Privilege Concerning Documents Generated During the Claims Investigation**

Plaintiff's Requests for Production of Documents 12-15 seek information generated during Federal's claims investigation. Plaintiff seeks an Order compelling Federal to produce all documents responsive to these requests and to produce Mr. Gil Schroeder for deposition. Request for Production of Documents 12 through 15 seek:

> 12. All Documents referring or relating to your investigation and analysis of Flagstar's Proof of Loss.
>
> 13. All Documents referring or relating to the coverage disclaimer letters sent to Flagstar by Federal on February 25, 2005 and by Continental on February 28, 2005.
>
> 14. All internal guidelines, policies, manuals, directives, procedures and other Documents which You used in making Your coverage determination about Flagstar's Proof of Loss.
>
> 15. All Documents referring or relating to communications and/or discussions concerning Flagstar's Proof of Loss: a) between You and any representatives of the other Defendants in this case; b) between You and any representatives of the Clausen Miller law firm; and c) between You and any representative of Moody's Inc.

Federal responded to these Requests for Production of Documents by conclusorily asserting that the requested discovery was irrelevant, vague, unduly burdensome, protected by the work

4

product doctrine, and protected by the attorney client privilege.  Notwithstanding these objections, Federal agreed to produce some documents responsive to some of the requests.  Federal did not produce a privilege log along with its Responses to Plaintiff's Requests for Production of Documents, nor did it produce one when it filed its Motion for a Protective Order, or in its Response to Plaintiff's Motion to Compel.  Federal did eventually produce a privilege log when ordered to do so by the Court.  Federal also produced the contested documents for *in camera* inspection pursuant to a Court order.

Federal's claim of privilege extends to its entire claims investigation – the communications and notes made by the claims examiner, the forensic accountant, and the outside lawyer who coordinated the investigation.  Federal asserts that all of these communications were made outside of the ordinary course of business, in anticipation of litigation, and for the primary purpose of procuring legal advice, rather than for any business purpose.  Federal supplied Flagstar with a 40 page report (not counting exhibits) prepared by Bob Moody of Moody's Inc., discussing in detail the outcome of Federal's investigation of Flagstar's claim.  On the following day Federal sent Flagstar a 26 page letter denying coverage and stating the reasons for that denial.

Federal is a very large insurance company, and it handles hundreds, if not thousands, of financial institution bond claims a year.  Federal's claim that it did not generate any documents for the business purpose of determining whether Flagstar's claim was covered is perilously close to an admission that Federal denied Flagstar's claim without conducting a reasonable claims evaluation. In camera review of the allegedly privileged documents reveals that Clausen Miller's lawyers helped coordinate Federal's factual investigation.  They coordinated with Federal's investigation of Flagstar's claim with Federal's claims examiner, Bruce Robbibaro, and an outside accountant, Bob

Moody. Flagstar gave Federal, Mr. Moody, and Mr. Robbibaro access to Flagstar's documents and employees. The investigation was done with the expectation that the information uncovered during the investigation would eventually be revealed to Flagstar.

**A.      Attorney Client Privilege**

In diversity cases, issues of attorney client privilege are governed by Michigan law. *See Reed v. Baxter,* 134 F.3d 351, 353 (6th Cir. 1998). The Sixth Circuit has defined the elements of the attorney-client privilege as follows: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communication relating to that purpose (4) made in confidence (5) by the client (6) are at his direction permanently protected (7) from disclosure by himself or the legal adviser (8) unless the protection is waived. *Id.* at 355.

Corporations, as fictitious entities, can seek and receive legal advice and communicate with counsel only through individuals empowered to act on behalf of the corporation. *In Re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997). The mere fact that a communication goes to or is received by corporate personnel who are not lawyers does not always vitiate the privilege. *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, 1987 WL 12919 (N.D. Ill. 1987). Conversely, a communication is not automatically privileged by virtue of the fact that it is made or received by a lawyer. *See e.g., Amway Corp. v. The Procter & Gamble Co.*, 2001 WL 1818698, at *5 (W.D. Mich. 2001).

A communication between two corporate employees is protected from disclosure by the attorney-client privilege only if it was made for the purpose of obtaining legal advice. *See e.g., In Re OM Group Securities Litigation*, 2005 WL 602346, at *5 (N.D. Ohio 2005); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988). When lawyers produce both documents containing

business advice and documents containing legal advice, courts place a particularly heavy burden upon the proponent of the privilege to make a clear showing that allegedly privileged document actually concerns legal, as opposed to business, advice. *See e.g., In re Feldberg*, 862 F.2d 622, 626-27 (7th Cir. 1988); *Amway*, 2001 WL 1818698, at * 5. Communications by attorneys acting as insurance claims investigators, rather than as attorneys, are not protected by the attorney client privilege. *Michigan First Credit Union v. Cumis Insurance Co.*, 2006 WL 185018 at *2 (E.D. Mich. July 5, 2006); *Mission National Insurance Co. v. Lilly*, 112 F.R.D. 160, 163( D. Minn. 1986).

**B.     Work Product Privilege**

Fed R. Civ. P. 26(b)(3) prevents discovery of material prepared by a party or his representative in preparation for litigation, except upon a showing of good cause. Since the work product privilege is embodied in the Federal Rules of Civil Procedure, the scope of the work product privilege is a matter of federal law. The work product privilege encompasses "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509-510 (1947).

The Sixth Circuit has established the analysis the Court must use to determine if the work product doctrine limits discovery: (1) the party requesting discovery must first show that the materials requested are relevant under Fed. R. Civ. P. 26(b)(1); (2) the burden then shifts to the proponent of the privilege to show that the material was "prepared in anticipation of litigation;" (3) the burden shifts back to the party requesting discovery to show that it has substantial need of the materials and cannot acquire them without undue hardship; (4) the court may not, in any case, permit discovery of mental impressions, conclusions, opinions, or legal theories of an attorney or other

representative concerning the litigation. *Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988).

In determining whether a document was prepared "in anticipation of litigation" Courts must ask first whether litigation was a real and substantial possibility and whether the particular document was generated because of the threat of litigation, and not for ordinary business purposes. *In Re OM Group Securities Litigation*, 226 F.R.D. 579, 585 (N.D. Ohio 2005) (citing 8 Wright, Miller, & Marcus, *Federal Practice and Procedure* § 2024 (2d ed. 1994)); *Harper v. Auto-Owners Insurance Co.*. 138 F.R.D. 655, 659. "'A more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business.'" *Binks Manufacturing Co. v. National Preso Industries, Inc.,* 709 F.2d 1109, 1119 (7th Cir. 1983) (quoting *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982)).

Defendant processes several hundred financial institution bond claims a year. A factual investigation of an insurance claim by an insurance company is within the ordinary course of an insurance company's business. *See e.g., Auto-Owners*, 138 F.R.D. at 663; Mission *National,* 112 F.R.D. at 164; *Tejada Fashions v. Yasuda Fire and Marine Insurance Co.*, 1984 WL 500 (S.D.N.Y. June 18, 1984).

> Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insured, the claims files containing such documents usually cannot be entitled to work product protection. Normally, only after the insurance company makes a decision with respect to the claim will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation.

*Pete Rinaldi's Fast Foods v. Great American Insurance Companies*, 123 F.R.D. 198, 201 (M.D.N.C. 1988).

Defendant's argument that the allegedly privileged documents were protected by the work product privilege relies heavily on *Stampley v. State Farm Fire & Casualty Co.*, 23 Fed. Appx. 467 (6th Cir. 2001). In that case, an insured filed a claim of loss under a fire insurance policy, and the insurer's investigation eventually led it to suspect that the insured had committed arson. The insurer agreed to produce most portions of the claims file generated before the insurer issued a final denial, but refused to produce eight specific documents, arguing that they were prepared in anticipation of litigation. The District Court concluded that these eight specific documents would not have been produced but for the prospect of litigation, and were therefore privileged. The *Stampley* Court held that the District Court's decision was not an abuse of discretion.

The Sixth Circuit recently clarified the scope of the work product privilege in *United States v. Roxworthy*, ___ F.3d ___, 2006 WL 2285975 (6th Cir. Aug. 10, 2006). *Roxworthy* held that the work product privilege protects documents that are produced "because of" litigation, and that documents created for both business and litigation purposes are protected unless the documents would have been created in substantially the same form absent the prospect of litigation. *Id.* This Court's task is therefore to determine which documents, if any, would not have been prepared absent Defendant's anticipation of litigation.

**C.    Waiver**

When a disclosure is made to an adversary, "there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege." *In re Columbia/ HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 306 (6th Cir. 2002). The voluntary disclosure of purportedly privileged material is inconsistent with the assertion of the privilege. *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996). "Once the privacy for the sake

of which the privilege was created [is] gone by the [client's] own consent . . . the privilege does not remain in such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice." *In Re Columbia/HCA Healthcare*, 293 F.3d 289 (6th Cir. 2002). If a party discloses a significant portion of a confidential communication, there is an implicit waiver of the attorney client privilege. *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999); *In re Perrigo Co.*, 128 F.3d 430, 438 (6th Cir. 1997). The privilege is waived with respect to all communications concerning the same subject matter. *Grand Jury Proceedings*, 78 F.3d at 255.

**D.     Analysis**

The bulk of the documents which Defendant claims are protected by the attorney client privilege are not privileged. *In camera* review of the disputed documents reveals that Clausen Miller attorneys frequently acted as claims examiners or investigators. Because Defendant owed Plaintiff both a statutory and contractual duty to conduct a good faith investigation before denying Plaintiff's claim, a substantial claims investigation would have been made even absent the prospect of litigation. More importantly, Defendant waived communications concerning the subject matter of the claims denial letter and Mr. Moody's investigative report. Because the claims denial letter and Mr. Moody's report address virtually every aspect of Defendant's claim investigation, the privileges have been waived as to nearly all of that investigation. Nonetheless, the Court concludes that isolated documents produced for *in camera* inspection were created for the provision of legal advice and address issues that are not contained in either Mr. Moody's report or in the claims denial letter. Specifically, the following portions of the documents identified in the privilege log are privileged and need not be produced[1]:

---

[1] For clarity, the Court refers to the documents by the numbers given in Defendant's privilege log.

1. Communication from Scott Schmookler to John Tomain et al. on February 23, 2005 at 4:55pm included in documents 9, 11, 13, 14, and 15.
2. Communication from Gilbert J. Schroeder to Bruce Robbibaro on February 22, 2005 at 2:18 pm included in documents 18, 22, 23, 24, 25, 26, 27, and 28.
3. Communication from Gil Schroder to Bruce Robbibaro dated February 18, 2005 found in document 39.
4. Communication from Gil Schroeder to Bruce Robbibaro made on January 20, 2005 at 3:57 pm and found in document 83, 85, and 86.
5. Communication between Gil Schroeder and Bruce Robbibaro made on January 19, 2005 at 12:05 pm and found in document 87.
6. Communication between Gil Schroeder and Bruce Robbibaro made on January 18, 2005 at 6:27 pm or 7:27 pm and found in documents 91 and 96.
7. Communication from Gil Schroeder to Bruce Robbibaro on January 10, 2005 at 2:04 pm, 2:05 pm, or 1:06 pm found in documents 107, 108, and 112.
8. Communication from Gil Schroeder to Bruce Robbibaro on January 11, 2005 at 10:58 am, found in document 107.
9. Communication from Gil Schroeder to Bruce Robbibaro on December 8, 2004 at 3:24pm or 4:24 pm, found in documents 146, 147, and 148.
10. Communication from Gil Schroeder to Bruce Robbibaro on December 1, 2004 at 2:40pm, found in documents 150 and 153.
11. Communication from Gil Schroeder to Bruce Robbibaro on November 17, 2004 at 9:13 am found in document 171.
12. Communication from Gil Schroeder to Bruce Robbibaro on November 12, 2004 at 1:02 pm, found in document 177
13. Communication from Gil Schroeder to Bruce Robbibaro on October 6, 2004 at 1:34pm, found in document 220.
14. Communication from Gil Schroeder to Bruce Robbibaro on September 22, 2004 at 6:29 pm found in document 240.
15. Communication from Gil Schroeder to Bruce Robbibaro on September 15, 2004 at 11:27 am found in document 249.
16. Communication from Gil Schroeder to Tim Markey on September 15, 2004 at 1:34 pm, found in document number 254.
17. Communication from Gil Schroeder to John Tomaine on August 19, 2004 at 8:59 pm, found in document number 314.
18. Communication from Scott Schmookler to Bruce Robbibaro on July 19, 2004 at 11:49 am found in documents 321, 322, and 323. However, the attachments to document 322 (tag numbers 1-23) relate to the underlying factual investigation and contain no legal advice or opinions. The attachments are not privileged.
19. Communication from Gilbert Schroeder to Bruce Robbibaro on July 17, 2004 at 5:35pm found in document 328.
20. Communication from Gil Schroeder to Bruce Robbibaro on October 6, 2004 at 2:34pm found in document 349.

Plaintiff's Motion to Compel and Defendant's Motion for Protective Order are **GRANTED IN PART AND DENIED IN PART.** Defendant will produce the documents contained in the privilege log, except for the documents listed on or before September 11, 2006. Gil Schroeder is in possession of relevant, non-privileged information, and may be subject to deposition concerning non-privileged matters pursuant to a proper notice of deposition under the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**NOTICE TO PARTIES**

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: August 21, 2006            s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Opinion was served upon Counsel of Record on this date.

Dated: August 21, 2006            s/ Lisa C. Bartlett
                                  Courtroom Deputy